IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **TREY CARNLEY** | § | |
| | § | |
| vs. | § | **CASE NO. 6:20-cv-225-JDK** |
| | § | |
| **MUGGLE TOWING, LLC,** *et al.* | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants' Motion for Summary Judgment Pursuant to Motor Carrier Act (ECF 30). The presiding judge referred the motion for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b) (ECF 35). Having considered the motion, response, and reply, it is recommended that the Motion for Summary Judgment Pursuant to Motor Carrier Act (ECF 30) be **DENIED**.

**BACKGROUND**

Plaintiff Trey Carnley initiated this lawsuit on April 30, 2020, asserting a claim against his former employers, Defendants Muggle Towing, LLC and Jessica Warren ("Defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). Plaintiff states that he worked for Muggle Towing, LLC as a tow truck driver from November 2018 to March 2020. According to Plaintiff, Jessica Warren is the owner, principal, officer and/or director of Muggle Towing. Plaintiff submits that he regularly worked in excess of forty hours per week and he was not paid for overtime at the rate of one and one-half times his regular rate of pay. Plaintiff states that he was paid solely on commission and Defendants failed to include the commissions paid to him in his regular rate when calculating his overtime pay.

1

On December 28, 2020, Defendants filed their motion for summary judgment. Defendants assert that, regardless of whether Plaintiff was an employee instead of an independent contractor, he was exempt from overtime pursuant to the Motor Carrier Act ("MCA") exemption in the FLSA. Defendants assert the MCA exemption as an affirmative defense in their First Amended Answer (ECF 17). More specifically, Defendants contend that Plaintiff worked as a tow truck driver who regularly handled towing jobs that involved travel on interstate highways in vehicles with a gross vehicle weight rating of more than 10,001 pounds. Defendants submit that Plaintiff primarily drove a 2016 Ford F-550 with a gross vehicle weight rating of approximately 18,000 pounds, a 2019 Kenworth T270 with a gross vehicle weight rating of approximately 26,000 pounds and a 2019 Freightliner Cascadia with a gross vehicle weight rating of approximately 66,000 pounds. Defendants additionally assert that Muggle Towing, LLC is a "motor carrier" as defined in the MCA. Finally, Defendants argue that Plaintiff's claims against Jessica Warren, individually, fail because there is no evidence that she was Plaintiff's employer as defined in the FLSA. In support of the motion for summary judgment, Defendants submitted a declaration of Jessica Warren stating that she is the owner and co-manager of Muggle Towing, LLC and providing a conclusory statement that the facts alleged in the motion for summary judgment are true.[1]

In his response, filed on January 8, 2021, Plaintiff asserts that the MCA is inapplicable because he regularly drove a lightweight vehicle. In addition to the three vehicles identified by Defendants, Plaintiff submits that at least once per week his job duties included driving a "camera car," a Ford Fiesta outfitted with a camera used to scan license plates to locate cars that are due for repossession. Plaintiff argues that the operation of this lightweight vehicle takes him out of the MCA exemption to the FLSA and makes him a "covered employee" under the FLSA. Plaintiff

---

[1] Declaration of Jessica Warren in Support of Defendants' Motion for Summary Judgment, ECF 30, at *14.

further asserts that the evidence shows that Jessica Warren controlled the day-to-day operations of Muggle Towing, LLC and she is a joint employer of Plaintiff together with Muggle Towing, LLC.

Plaintiff filed a declaration in support of his response to the motion for summary judgment. In his declaration, Plaintiff agrees that his primary responsibilities were providing tow services, roadside assistance and repossessions, but he states that he was also "assigned to [drive] the camera car."[2] Plaintiff asserts that he "drove the camera car at least once per week during [his] employment," he "often drove it multiple times per week" and "drove the camera car for several hours every time [he] was assigned to the camera car."[3] Plaintiff additionally states that "Defendants directed [him] to use the camera car for the purpose of running errands such as picking up tools and supplies for use in providing towing services or performing maintenance on the tow trucks."[4]

Defendants filed a reply on January 22, 2021. Defendants assert that Plaintiff's job responsibilities did not include driving a camera car on behalf of Muggle Towing, LLC. Defendants submit that they paid Plaintiff as a tow truck driver and did not pay him to operate a camera car. Instead, other individuals, including Plaintiff's father, were paid by Defendants to drive the camera car and scan for license plates. With the reply, Defendants filed another declaration of Jessica Warren. Ms. Warren states that Plaintiff's "work responsibilities did not include driving a camera car for Muggle Towing, LLC."[5] She further asserts that Defendants did not pay Plaintiff to drive the camera car and any time Plaintiff may have spent inside the camera

---

[2] Declaration of Trey Carnley, ECF 32-1, at *2.
[3] *Id*.
[4] *Id*.
[5] Defendants' Reply in Support of Motion for Summary Judgment Pursuant to Motor Carrier Act, Exhibit A, Declaration of Jessica Warren in Support of Defendants' Reply Brief to Motion for Summary Judgment, ECF 36, at *8.

car "was extremely minimal and/or did not relate to his job responsibilities for Muggle Towing, LLC."[6]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence show that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one that might affect the outcome of the suit under governing law. *Id.* Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Id.* When ruling on a motion for summary judgment, the Court must make all inferences from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may meet its burden by pointing to the absence of evidence supporting any claim. *Celotex Corp.*, 477 U.S. at 325.

If the movant meets its burden, the nonmovant must go beyond the pleadings and set forth specific facts in the record sufficient to support his claim. *Anderson*, 477 U.S. at 257. The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the factors, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant must submit competent summary

---

[6] *Id.* at *9.

judgment evidence sufficient to defeat a properly supported motion for summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The nonmovant is also required to articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith v. United States*, 392 F.3d 621, 625 (5th Cir. 2004).

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutl. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace*, 80 F.3d at 1048 (citing *Little*, 37 F.3d at 1075).

An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A material fact is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.

## APPLICABLE LAW

Plaintiff filed this FLSA lawsuit seeking relief for unpaid overtime. Pursuant to the FLSA, non-exempt employees are to receive overtime pay from their employer for work exceeding forty hours in a workweek. 29 U.S.C. § 207(a). Aggrieved employees may bring suit for a violation of § 207 to recover unpaid overtime compensation. 29 U.S.C. § 216(b). Suit may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id*.

The provisions of the FLSA do not apply, however, to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This FLSA exemption is referred to as the Motor Carrier Act (MCA) exemption. A primary objective of enacting the MCA exemption was safety in motor carrier activity. *U.S. v. American Trucking Associations*, 310 U.S. 534, 539, 60 S.Ct. 1059 (1940). Exemptions to the FLSA are to be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, --- U.S. ---, 138 S.Ct. 1134, 1142 (2018) (rejecting the principle that FLSA exemptions are to be construed narrowly). For the MCA exemption to apply, the employee's relevant "safety-affecting activities" must be the duties he is "called upon in the ordinary course of his work to perform" and not be "so trivial, casual, and insignificant as to be de minimis." 29 C.F.R. § 782.2(b)(3). The burden is on the employer to prove that this exemption to the FLSA applies. *Amaya v. NOYPI Movers*, LLC 741 Fed.Appx. 203, 204 (5th Cir. 2018).

Section 31502 gives the Secretary of Transportation the power to establish "qualifications and maximums hours of service of employees of, and safety of operation and equipment of, a motor carrier" and "qualifications and maximum hours of service of employees of, and standards

of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(1) and (2).  Labor regulations provide further guidance on the applicability of the exemption.  Application of the exemption "depends both on the class to which his employer belongs and on the class of work involved in the employee's job."  29 C.F.R. § 782.2(a).  Employees are subject to the power of the Secretary of Transportation for establishing maximum hours and qualifications of service if they: "(1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act . . ., and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."  *Id*.

The MCA exemption was amended in the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU) in 2005 to apply only to "commercial motor vehicles," defined as vehicles weighing at least 10,001 pounds.[7] Congress then enacted the SAFETEA-LU Technical Corrections Act of 2008 on June 6, 2008, which restored the Secretary of Transportation's authority to regulate all motor carriers, regardless of the weight of their vehicles.  *See* 49 U.S.C. § 13102(16) (defining "motor vehicle.").  The Technical Corrections Act ("TCA"), however, narrows the employees who are covered by the FLSA, and excepted from the MCA exemption, to those "whose work, in whole or in part," affects "the safety and operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . ." SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110–244, § 306(a), (c), 122 Stat. 1572, 1621 (June 6, 2008); *Carley*, 890 F.3d at 579 (the TCA designates "a class of employees to which the MCA exemption does not apply.").

---

[7] The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Pub. L. No. 109–59, 119 Stat. 1144 (2005); *see also*, SAFETEA-LU § 4142(a), 119 Stat. at 1747.

## ANALYSIS

*Application of the MCA Exemption*

Where, as here, Defendants seek summary judgment on an affirmative defense, they "must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006). The burden is on Defendants to establish that the MCA exemption applies. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990). As previously noted, Defendants submitted a declaration in support of the motion for summary judgment that merely includes a conclusory statement that the Statement of Undisputed Facts included in the motion for summary judgment is true.

Plaintiff admits, however, that his job responsibilities for Defendants included towing jobs, repossessions, and roadside assistance work.[8] He additionally agrees that drivers for Muggle Towing, LLC transport vehicles on interstate highways and travel within Texas, as well as across state lines.[9] Plaintiff further admits that the towing vehicles he drove during his employment exceeded 10,000 pounds.[10] He asserts, however, that the TCA lightweight vehicle exception to the MCA exemption applies because he also drove a passenger vehicle during his employment, referred to as the "camera car," to scan license plates looking for repossessions.

The burden is on Plaintiff to prove that the TCA lightweight vehicle exception to the MCA exemption applies to this case. *Carley v. Crest Pumping Technologies*, 890 F.3d 575, 580 (5th Cir. 2018). The TCA only requires that the employee's work "in whole or in part" affects the safety of lightweight vehicles. SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110–244, § 306(a), (c), 122 Stat. 1572, 1621 (June 6, 2008). In support of his assertion that the TCA

---

[8] Response to Defendants' Motion for Summary Judgment, ECF 32, at *3.
[9] *Id*.
[10] *Id*. at *4.

exception applies, Plaintiff submitted a declaration stating that, while employed by Defendants, he regularly drove a lightweight vehicle at least once per week as a part of his job duties. He further contended that there were days he only drove the "camera car" and did not drive a tow truck.

The parties do not dispute that the "camera car" is a lightweight vehicle that is less than 10,000 pounds. Defendants dispute, however, that Plaintiff drove the "camera car" as a part of his job duties. Defendants included a competing declaration in their reply brief asserting that Plaintiff did not operate the "camera car" as a part of his employment. The Court cannot determine from the competing declarations whether Plaintiff's job duties, in part, included operation of a lightweight vehicle. This is a factual dispute that is for a jury, not the Court, to decide.

It is noted that Defendants imply in their response that Plaintiff is estopped from arguing that the TCA exception applies because he did not include any factual allegations in his pleadings related to driving the "camera car." Defendants do not provide any authority for asserting that Plaintiff is precluded from asserting the TCA exception. "Nothing in the rules suggests that a plaintiff has an obligation to file a responsive pleading notifying a defendant that he or she intends to invoke an exception to an affirmative defense." *Butler v. TFS Oilfield Services*, LLC, 2019 WL 177304, at *4 (W.D.Tex. Jan. 11, 2019).

Plaintiff raised a genuine issue of material fact concerning whether the TCA lightweight vehicle exception applies, leaving a factual dispute for the jury to decide. Defendants are not entitled to summary judgment on the MCA exemption.

*Jessica Warren*

Defendants additionally argue, without citation, that the claims against Jessica Warren, individually, fail as a matter of law because she was not Plaintiff's employer for purposes of the FLSA. The FLSA defines an employer as "any person acting directly or indirectly in the interest

of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has termed the Act's employer definition 'expansive' and has held that 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work' create statutory employer status." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984) (citing *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427 (1973)). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 972.

The Fifth Circuit employs an "economic reality test" to determine whether an employer/employee relationship exists, such that economic reality will govern the determination of employer status. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010) and *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)). The inquiry considers whether the "alleged employee, as a matter of economic reality, is economically dependent upon the business to which [he] renders [his] services." *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993) (citing *Brock v. Mr. W Fireworks, Inc.*, 841 F.2d 1042, 1043 (5th Cir.), *cert. denied*, 484 U.S. 924, 108 S.Ct. 286 (1987)). When considering whether an employer/employee relationship exists, courts should "adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent." *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983) (citing *Donovan v. Janitorial Services, Inc.*, 672 F.2d 528 (5th Cir. 1982)).

The economic reality test applies four considerations to the determination of employer status, including whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment,

(3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers,* 673 F.3d at 355 (quoting *Williams*, 595 F.3d at 620). Where, as here, a plaintiff alleges that there is more than one employer, the economic reality test is applied to "each individual or entity alleged to be an employer and each must satisfy the four part test." *Id*. (quoting *Graves*, 909 F.3d at 1556). The burden of proof is on the plaintiff to establish that an employer/employee relationship exists. *Id*. at 357.

Plaintiff produced summary judgment evidence, in the form of Plaintiff's declaration, that Jessica Warren ran the day-to-day operations of the business, assigned all shifts, vehicle assignments, and job duties, directed work schedules, handled payroll, and hired employees, including Plaintiff.[11] Defendants did not respond to Plaintiff's arguments or evidence in their reply brief or submit evidence to contradict Plaintiff's evidence. Plaintiff raised a genuine issue of material fact and Defendants have not shown that they are entitled to judgment as a matter of law on this issue.

## **RECOMMENDATION**

It is hereby **RECOMMENDED** that the Motion for Summary Judgment Pursuant to Motor Carrier Act (ECF 30) be **DENIED**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations

---

[11] Declaration of Trey Carnley, ECF 32-1, at *3.

and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 8th day of March, 2021.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE